UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| HATTIE B., | : | |
|       Plaintiff, | : | |
| | : | |
|       v. | : | C.A. No. 20-414-PAS |
| | : | |
| KILOLO KIJAKAZI, | : | |
| Acting Commissioner of Social Security, | : | |
|       Defendant. | : | |

**MEMORANDUM AND ORDER**

PATRICIA A. SULLIVAN, United States Magistrate Judge.

Now pending before the Court is the motion of Plaintiff Hattie B. to reverse the decision

of the Commissioner.  ECF No. 13.  She argues that the findings[1] of the administrative law judge

("ALJ") are tainted because: (a) in formulating the residual functional capacity ("RFC"),[2] the

ALJ erroneously found persuasive and relied on the prior administrative medical findings of the

three physicians who served as state agency experts, and found unpersuasive (as unsupported and

inconsistent with other evidence) the opinion of a treating nurse practitioner; (b) the ALJ made

material omissions in fashioning the RFC; and (c) at Step Four, the ALJ erroneously found that

Plaintiff could still perform past relevant work ("PRW") without proper consideration of

Plaintiff's testimony and the documentary evidence regarding her job duties.  Id. at 10-17.

Defendant Acting Commissioner Kilolo Kijakazi ("Commissioner") argues that the ALJ properly

applied the law to the substantial evidence of record and that any errors are harmless; he has filed

---

[1] The ALJ also made findings regarding Plaintiff's mental impairments.  See Tr. 20-21.  As she confirmed during the Court's hearing, Plaintiff has not challenged these findings; therefore, no reference to the mental impairments (or any treatment for them or any analysis of them) appears in this Memorandum and Order.

[2] "RFC" or "residual functional capacity" is "the most you can still do despite your limitations," taking into account "[y]our impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what you can do in a work setting."  20 C.F.R. § 404.1545(a)(1).

a counter motion for an order affirming the ALJ's decision.  ECF No. 16.  Having reviewed the

entirety of the record, I find that the ALJ's findings are consistent with applicable law and

sufficiently supported by substantial evidence; the only error is a harmless scrivener's mistake.

## I.    BACKGROUND

Plaintiff Hattie B. is a high-school educated woman now in her sixties[3] who had worked

for seventeen years in the credit department of a textile company as a "senior credit associate"

until she was laid off in May 2017, because her long-time employer merged with another entity

and outsourced the function performed by her department.  Tr. 38, 48, 58, 194, 260, 455.  She

claims she did not make a meaningful effort[4] to find new work after she was laid off because of

the limitations caused by the symptoms of an array of medical conditions.

On April 30, 2018, Plaintiff applied for Disability Insurance Benefits ("DIB") under 42

U.S.C. § 405(g) of the Social Security Act (the "Act").  Tr. 17.  On November 19, 2019, the ALJ

relied on what she found to be the persuasive prior administrative medical findings of three non-

examining state-agency expert physicians (Drs. Borek, Kahn and Holley) and made the Step

Two findings that obesity and chronic kidney disease ("CKD") were severe impairments, while

the established impairments of diabetes, hypertension/hyperlipidemia, sleep apnea,

diverticulosis, GERD, cervicalgia/myalgia (neck and shoulder), and thyroid and Vitamin D

---

[3] Plaintiff was 59, "advanced age," on her alleged date of onset, May 31, 2017.  Several months later, she turned sixty, "closely approaching retirement age."  Tr. 58.  Plaintiff's age is material to the outcome of this case.  Because of her age, if the Commissioner ultimately finds Plaintiff was limited to less than medium exertional work and also was unable to perform her past relevant work, a finding of disability is compelled by application of the Grid Rules. 20 C.F.R. Part 404, Subpart P, App. 2 § 200.00 *et seq.*

[4] Plaintiff's testimony on this point is confusing.  On direct examination by the ALJ, she testified that the job ended because of the outsourcing of the entire department and that, after she was laid off, she looked for work and described the kinds of jobs she applied for.  Tr. 38.  Then, on examination by her attorney, she testified that she was not "actually trying to get a job" and that, if she had not been laid off, she would have stopped working anyway because of her medical impairments.  Tr. 48-49.  Plaintiff has not challenged the ALJ's reliance on this testimonial inconsistency as part of the foundation for her adverse credibility finding.  Tr. 23-24.

deficiency did not cause significant functional limitations and were all non-severe.[5]  Tr. 19-20.

Proceeding further in the familiar sequential analysis, the ALJ found that Plaintiff retained the

ability to perform medium work with environmental and postural limits (no more than frequent

stooping, balancing, kneeling, crouching, crawling and climbing).  Id. at 22.

At Step Four, the ALJ relied on a vocational expert ("VE"), who listened to Plaintiff's

oral testimony describing (Tr. 37) her past work and had access to Plaintiff's written description

of past work that she provided as part of her application (Tr. 185-86, 194).  After confirming that

he had "sufficient information to classify the past-relevant work," Tr. 53, the VE testified that

Plaintiff's PRW was semi-skilled and sedentary and is captured in the Dictionary of

Occupational Titles ("DOT") under the heading of "credit clerk," DOT No. 205.367-022, which

is a semi-skilled sedentary position.  Tr. 54; see also DOT No. 205.367-022 (U.S. Dept. of Labor

4th ed. 1991), 1991 WL 671717.  Plaintiff's attorney's cross-examination of the VE confirmed

that this classification came from the DOT.  Tr. 57.  Plaintiff did not ask the VE about the two

other DOT classifications she had suggested in her pre-hearing brief,[6] Tr. 144, or whether, as

performed, Plaintiff's past work was really a composite position with functional requirements

more robust than those applicable to the "credit clerk" position.  A week after the hearing was

over and the VE was excused, Plaintiff filed a written objection to the VE's testimony that

---

[5] At Step Two, the ALJ also found that headaches, anemia, polyps, sinusitis and allergic rhinitis had resolved with treatment and did not cause ongoing symptoms or restrictions.  Plaintiff confirmed at the hearing that she has not challenged the ALJ's Step Two findings.

[6] One of these – "credit card clerk" – seems to be so totally off-base that Plaintiff has not raised it again in the proceedings before the Court.  The other – "customer service clerk (retail)," DOT No. 299.367-010 – also is not helpful.  The Court has reviewed that job description, which reveals that it bears no relationship to the work Plaintiff described in her work history or in her testimony.  DOT, Customer-Service Clerk (retail trade) ("Arranges for gift wrapping . . . .  Takes orders for such items as decorated cakes, cut flowers . . . .  Acts as WEDDING CONSULTANT.").  DOT No. 299.367-010, 1991 WL 672630.  During the hearing, Plaintiff confirmed that she no longer relies on this DOT classification.

Plaintiff's PRW aligned with the functions required for a job DOT classifies as "credit clerk."
Tr. 257-58.  Pointing to her work history report, Plaintiff argued that her job was really a
composite of "[c]redit [c]lerk" (the DOT job that the VE testified was appropriate) and
"[c]ustomer [s]ervice [c]lerk," a DOT job that Plaintiff has since conceded is inapplicable.[7]  Id.
The ALJ overruled this objection.  Tr. 25 n.6.  Based on the VE's unrebutted testimony and her
RFC finding, the ALJ found that Plaintiff could perform her PRW as a credit clerk ("exertionally
sedentary, semiskilled (SVP 4) employment") both "as actually and generally performed."  Tr.
25.  Alternatively, the ALJ found that, if she assumed Plaintiff's PRW had been a composite of
"credit clerk" and "customer service clerk," as Plaintiff's objection argued, the result would be
the same in that Plaintiff's RFC would "clearly allow for the performance of both of those DOT
jobs at the very least as they both were actually performed by the claimant."  Tr. 25 n.6.

Following an unsuccessful request for Appeals Council review, the Commissioner denied
Plaintiff's applications based on the ALJ's decision.

## II.      STANDARD OF REVIEW

The Commissioner's findings of fact are conclusive if supported by substantial evidence.
42 U.S.C. § 405(g).  Substantial evidence is more than a scintilla – that is, the evidence must do
more than merely create a suspicion of the existence of a fact and must include such relevant
evidence as a reasonable person would accept as adequate to support the conclusion.  Ortiz v.
Sec'y of Health & Human Servs., 955 F.2d 765, 769 (1st Cir. 1991) (per curiam); Rodriguez v.
Sec'y of Health & Human Servs., 647 F.2d 218, 222 (1st Cir. 1981); Brown v. Apfel, 71 F.
Supp. 2d 28, 30 (D.R.I. 1999), aff'd, 230 F.3d 1347 (1st Cir. 2000) (per curiam).  Once the Court
concludes that the decision is supported by substantial evidence, the Commissioner must be

---

[7] See n.6 supra.

affirmed, even if the Court would have reached a contrary result as finder of fact.  Rodriguez

Pagan v. Sec'y of Health & Human Servs., 819 F.2d 1, 3 (1st Cir. 1987) (per curiam); see also

Barnes v. Sullivan, 932 F.2d 1356, 1358 (11th Cir. 1991); Lizotte v. Sec'y of Health & Human

Servs., 654 F.2d 127, 128-131 (1st Cir. 1981).  The determination of substantiality is based upon

an evaluation of the record as a whole.  Brown, 71 F. Supp. 2d at 30; see also Frustaglia v. Sec'y

of Health & Human Servs., 829 F.2d 192, 195 (1st Cir. 1987) (per curiam); Parker v. Bowen,

793 F.2d 1177, 1180 (11th Cir. 1986) (court also must consider evidence detracting from

evidence on which Commissioner relied).  Thus, the Court's role in reviewing the

Commissioner's decision is limited.  Brown, 71 F. Supp. 2d at 30.  The Court does not

reinterpret the evidence or otherwise substitute its own judgment for that of the Commissioner.

Id. at 30-31 (citing Colon v. Sec'y of Health & Human Servs., 877 F.2d 148, 153 (1st Cir. 1989)

(per curiam)).  "[T]he resolution of conflicts in the evidence is for the Commissioner, not the

courts."  Id. at 31.

If the Court finds either that the Commissioner's decision is not supported by substantial

evidence, or that the Commissioner incorrectly applied the law relevant to the disability claim,

the Court may remand a case to the Commissioner for a rehearing under Sentence Four of 42

U.S.C. § 405(g).  Allen v. Colvin, C.A. No. 13-781L, 2015 WL 906000, at *8 (D.R.I. Mar. 3,

2015) (citing Jackson v. Chater, 99 F.3d 1086, 1097-98 (11th Cir.1996)).

## III.    DISABILITY DETERMINATION

The law defines disability as the inability to do any substantial gainful activity by reason

of any medically determinable physical or mental impairment which can be expected to result in

death or which has lasted or can be expected to last for a continuous period of not less than

twelve months.  42 U.S.C. § 416(I); 20 C.F.R. § 404.1505.  The impairment must be severe,

making the claimant unable to do previous work, or any other substantial gainful activity which

exists in the national economy.  42 U.S.C. § 423(d)(2); 20 C.F.R. §§ 404.1505-1511.

### A. The Five-Step Evaluation

The ALJ must follow five steps in evaluating a claim of disability.  See 20 C.F.R. §

404.1520.  First, if a claimant is working at a substantial gainful activity, the claimant is not

disabled.  20 C.F.R. § 404.1520(b).  Second, if a claimant does not have any impairment or

combination of impairments that significantly limit physical or mental ability to do basic work

activities, then the claimant does not have a severe impairment and is not disabled.  20 C.F.R. §

404.1520(c).  Third, if a claimant's impairments meet or equal an impairment listed in 20 C.F.R.

Part 404, Appendix 1, the claimant is disabled.  20 C.F.R. § 404.1520(d).  Fourth, if a claimant's

impairments do not prevent doing past relevant work, the claimant is not disabled.  20 C.F.R. §

404.1520(e)-(f).  Fifth, if a claimant's impairments (considering RFC, age, education and past

work) prevent doing other work that exists in the local or national economy, a finding of disabled

is warranted.  20 C.F.R. § 404.1520(g).  Significantly, the claimant bears the burden of proof at

Steps One through Four, but the Commissioner bears the burden at Step Five.  Sacilowski v.

Saul, 959 F.3d 431, 434 (1st Cir. 2020); Wells v. Barnhart, 267 F. Supp. 2d 138, 144 (D. Mass.

2003) (five step process applies to DIB claims).

### B. Opinion Evidence

For applications like this one, filed on or after March 27, 2017, the SSA has

fundamentally changed how adjudicators assess opinion evidence.  The familiar and

longstanding requirements – that adjudicators must assign "controlling weight" to a well-

supported treating source's medical opinion that is consistent with other evidence, and, if

controlling weight is not given, must state the specific weight that is assigned – are gone.  20

C.F.R. § 404.1520c(a).  Instead, adjudicators "will not defer or give any specific evidentiary

weight, including controlling weight, to any medical opinion(s) or prior administrative medical

finding(s), including those from . . . medical sources." Id.  Rather, an ALJ must consider the

persuasiveness of all medical opinions in a claimant's case record.  See 20 C.F.R. § 404.1520c.

The most important factors to be considered when the Commissioner evaluates persuasiveness

are supportability and consistency; these are usually the only factors the ALJ is required to

articulate.  20 C.F.R. § 404.1520c(b)(2); Jones v. Berryhill, 392 F. Supp. 3d 831, 839 (M.D.

Tenn. 2019); Gorham v. Saul, Case No. 18-cv-853-SM, 2019 WL 3562689, at *5 (D.N.H. Aug.

6, 2019).  Supportability "includes an assessment of the supporting objective medical evidence

and other medical evidence, and how consistent the medical opinion or . . . medical finding[] is

with other evidence in the claim."  Revisions to Rules Regarding the Evaluation of Medical

Evidence, 82 Fed. Reg. 5844, 5859 (Jan. 18, 2017).  Other factors that are weighed in light of all

of the evidence in the record include the medical source's relationship with the claimant and

specialization, as well as "other factors" that tend to support or contradict the medical opinion or

finding.  See 20 C.F.R. § 404.1520c(c)(1)-(5); Revisions to Rules Regarding the Evaluation of

Medical Evidence, 82 Fed. Reg. at 5859.  In other words, "[a] medical opinion without

supporting evidence, or one that is inconsistent with evidence from other sources, [is] not . . .

persuasive regardless of who made the medical opinion." Id. at 5854.

     **C.**     **Reliance on Experts**

An ALJ cannot render a medical opinion in the face of conflicting and inconsistent

medical evidence without the assistance of a medical expert. Santiago v. Sec. of Health &

Human Servs., 944 F.2d 1, 7 (1st Cir. 1991) (per curiam) ("[A]n expert's RFC evaluation is

ordinarily essential unless the extent of functional loss, and its effect on job performance, would

be apparent even to a lay person.").  If the medical evidence is such that a "reasonable mind

might accept [it] as adequate to support a conclusion" of disability, the ALJ cannot rest on his

untutored lay analysis to interpret it otherwise.  Sherry B. v. Saul, 518 F. Supp. 3d 590, 591

(D.R.I. 2021) (cleaned up).  Relatedly, it is error for an ALJ to deny benefits in reliance on a

consulting or a non-examining expert physician or psychologist who, despite expertise, was not

privy to parts of the medical record that evidence worsening or that support the claimed

limitations.  Padilla v. Barnhart, 186 F. App'x 19, 22-23 (1st Cir. 2006) (per curiam); Virgen C.

v. Berryhill, C.A No. 16-480 WES, 2018 WL 4693954, at *3 (D.R.I. Sept. 30, 2018); Cruz v.

Astrue, No. C.A. 11-638M, 2013 WL 795063, at *13 (D.R.I. Feb. 12, 2013), adopted, 2013 WL

802986 (D.R.I. Mar. 4, 2013).  In such circumstances, without procuring testimony from a

medical expert who has interpreted the entire medical file, the ALJ is substituting his lay

judgment for a necessary expert medical opinion; the resulting decision is subject to remand

because it is not supported by substantial evidence.  Hall v. Colvin, 18 F. Supp. 3d 144, 152

(D.R.I. 2014).

IV.     ANALYSIS

        A.      Claim of RFC Error in Treatment of Opinion Evidence

        Plaintiff challenges the ALJ's approach to the physical opinion evidence, focusing on her

treatment of the prior administrative expert findings of the three non-examining expert

physicians and of the opinions of Nurse Welch, which conclude that Plaintiff cannot use her

hands and suffers from pervasive pain and weakness with significant impact on her ability to

function.

        The Court begins with the ALJ's reliance on what she found to be the persuasive prior

administrative medical findings of the three non-examining state-agency expert physicians, Drs.

Borek, Kahn and Holly.  Plaintiff contends that the Court must remand for further proceedings

because these findings were completed in January 2019, yet Plaintiff continued treatment

through the date of the hearing in October 2019.  Therefore, the non-examining experts did not

see the treating records submitted after their file review and they did not see the Welch opinions,

which were not signed until July 1, 2019.  As specific support for this argument, she points only

to the Welch opinions,[8] arguing that the Court cannot tell if the state agency physicians might

have rendered different opinions if they had seen this material.

Apart from the Welch opinions, this argument fails because it cannot overcome the well-

settled proposition that, when the pre- and post-review records are similar, the ALJ may rely on

state-agency opinions that analyze solely the earlier material.  Andrea T. v. Saul, C.A. No. 19-

505WES, 2020 WL 2115898, at *6 (D.R.I. May 4, 2020).  That is, a state-agency opinion is not

irrelevant merely because the expert was not privy to updated medical records; to hold otherwise

"would defy logic and be a formula for paralysis."  Sanford v. Astrue, No. CA 07-183 M, 2009

WL 866845, at *8 (D.R.I. Mar. 30, 2009).  Rather, reliance on a file-reviewer's findings is error

only if the claimant demonstrates that the post-review record evidences a worsening or a new

condition that requires medical interpretation.  Alcantara v. Astrue, 257 F. App'x 333, 334 (1st

Cir. 2007) (per curiam); Stacey S. v. Berryhill, No. 18-00284JJM, 2019 WL 2511490, at *7

---

[8] Plaintiff's belated attempt to fill this hole by referencing evidence other than the Welch opinions in her reply brief is unavailing.  First, the Court should disregard the development of a new argument on reply.  Wills v. Brown Univ., 184 F.3d 20, 27 (1st Cir. 1999).  In any event, the cited records do not amount to evidence of worsening that undermines the ALJ's RFC.  For example, Plaintiff points to post-hearing evidence submitted to the Appeals Council, which establishes that, after the ALJ's decision, her CKD worsened to "stage 4."  Tr. 8.  The Appeals Council properly found that this evidence of worsening is a post-ALJ decision development, which relates only to a subsequent period; the Appeals Council specified that Plaintiff could have a protective filing date to cover this evidence if she submitted a new application with respect to the subsequent period.  Tr. 2.  Regarding Plaintiff's claims of neck swelling, the post-file review material reveals that Dr. Alla Korennaya clinically explored Plaintiff's complaint and suggested follow up, which appears to have resulted in no treatment but advice to follow up again in one year.  Tr. 579-84; see Tr. 753-58 (nodular thyroid observed but no treatment ordered; follow up in one year).  As to Plaintiff's references to records regarding headache, vision changes, sleep disturbance, fatigue and heart palpitations, these complaints are not new – to the contrary, they are all matters that were well developed in the file that was reviewed by the state agency experts.  E.g., Tr. 215, 275, 342, 345, 351, 360.

9

(D.R.I. June 18, 2019); Ruben M. v. Saul, C.A. No. 19-119MSM, 2020 WL 39037, at *10

(D.R.I. Jan. 3, 2020), adopted, 2020 WL 555186 (Feb. 4, 2020) ("ALJ's reliance on the state-

agency physician opinion is error because . . . the post-file review treating records . . .

evidence[e] a worsening . . . that the state-agency physician did not consider").

Apart from the Welch opinions, Plaintiff has not pointed to anything that amounts to

post-file review treating evidence supporting "a significant worsening of the claimant's

condition" or suggesting any greater limitations then what the expert state-agency physicians

found.  Virgen, 2018 WL 4693954, at *3; see Michele S. v. Saul, C.A. No. 19-65WES, 2019 WL

6242655, at *8 (D.R.I. Nov. 22, 2019) (when post-file review records are either consistent with

or more benign that those seen by state agency expert, expert's opinion may be relied on as

substantial evidence); Preston v. Colvin, Civil No. 2:13-CV-321-DBH, 2014 WL 5410290, at *2

(D. Me. Oct. 21, 2014) ("When the medical evidence postdating state-agency reviewers' reports

is essentially cumulative, an administrative law judge's reliance on those reports is not error.").

This conclusion – that, apart from the Welch opinions, there is nothing that the ALJ overlooked –

is confirmed by the Court's second look.  That is, during the nine months from the last signature

by the state agency experts until the ALJ's hearing, Plaintiff's treating record reflects, *inter alia*,

the following:

- Nephrologist Dr. Ganjoo's observations and findings that Plaintiff "[f]eels well overall; no complaints."  Tr. 518.

- Cardiologist Dr. Mazza's finding that Plaintiff is doing "well from a cardiac perspective."  Tr. 723.

- Physical therapist notes that Plaintiff "progressed well with regards [sic] to pain level and has returned to gym."  Tr. 746-47.

10

This evidence amply supports the ALJ's finding that the pre- and post-file review treating record over the period from February 2016 until August 2019 reflects basically normal examinations and that she was stable and "feels well overall, no complaints." Tr. 24 (citing evidence).

Importantly, in addition to the treating records of the specialists (as summarized above), this portion of the treating record also includes notes from the two post-file review treating encounters (in January and May 2019) with Nurse Welch. Tr. 538-41, 765-67. These mesh with the balance of the treating record in that they reveal no evidence of worsening. Rather, Nurse Welch's findings on examination for treatment consistently reflect that, during the post-file review period, Plaintiff continued to "workout at the gym several times each week" and had no headache, no paresthesias, no edema, no tingling, and no gait abnormality, with normal strength and intact sensation on examination. Tr. 538-40; see Tr. 538 ("Otherwise healthy with no other concerns to discuss."). Put simply, none of the post-file review treating material, including the treating records from Nurse Welch, evidences worsening or an impairment that the state agency physicians ignored.

What remains are the opinions signed by Nurse Welch on July 1, 2019, and the related record from June 18, 2019, reflecting Nurse Welch's encounter with Plaintiff on which she based her opinions. The issue for the Court is whether the ALJ erred in her determination that Nurse Welch's opinions are not persuasive or in relying on the findings of the three state agency physicians despite the reality that they did not see these opinions.

The Court's consideration begins with Plaintiff's threshold contention that the ALJ did not adequately explain the basis on which she made the finding that Nurse Welch's opinions are not persuasive. The argument is unavailing because it requires the Court to ignore what the ALJ

11

actually wrote in her decision.[9]  Far from omitting any written analysis (as Plaintiff argues), the

ALJ closely adhered to the requirement of 20 C.F.R. § 404.1520c(b)(2) that the focus must be on

supportability and consistency.  That is, the ALJ specifically (and accurately) critiqued Nurse

Welch's July 2019 opinions as "indicating an inability to perform any type of significant or

sustained physical work activity to be unpersuasive, unsupported and inconsistent with the

overall medical evidence of record including the relatively benign examination and diagnostic

findings."  Tr. 24.  Further, the ALJ specifically noted the precise exhibits of record to which she

referenced in making this finding.  Id.; see also Tr. 20 (Nurse Welch's opinion that "physical

inability to perform any type of exertional work is internally inconsistent with the benign

physical examination findings and negative diagnostic testing results," listing specific exhibits of

record).  The ALJ's work is entirely consistent with her legal duty to explain her reasoning.

Moving to the merits, the Court finds that the ALJ got it right.  The Welch opinions are

based on notes that Nurse Welch made at an appointment on June 18, 2019, which was not a

treating appointment, but rather was "for an evaluation for disability."  Tr. 760.  Further, all the

pertinent findings in this note are outliers, totally inconsistent with the rest of the treating record,

including Nurse Welch's own treating notes from the two immediately prior appointments in

January and May 2019 (which were for treating purposes).  For example, Nurse Welch's annual

examination of Plaintiff was conducted in January 2019.  Tr. 538-41.  Her notes from that

appointment reflect no concerns of any sort about Plaintiff's hands (and certainly no findings that

she lacked the ability to use them at all); no issues at all with ambulation ("no Gait

---

[9] Plaintiff's argument asks the Court to ignore the ALJ's sentence that directly discusses Nurse Welch's opinions and to focus instead on the final two sentences of the same paragraph (that is, the paragraph that addresses opinion evidence).  In these final sentences, the ALJ accurately restated the regulatory guidance regarding opinion evidence that permits an ALJ to omit from the written analysis discussion of evidence that is not "valuable nor persuasive" or evidence amounting to opinions on issues reserved to the Commissioner and of other governmental entities.  Tr. 24. Plaintiff's argument that the ALJ simply relegated the Welch opinions to these categories and otherwise ignored them is entirely belied by the text of the decision.

abnormality"); intact sensation, no edema; normal strength in upper and lower extremities; and no boney or muscular tenderness in the back.  Id.  Plaintiff's next appointment with Nurse Welch, on May 15, 2019, is more limited in scope because it was focused on abdominal problems that Plaintiff attributed to salads and vegetables she had eaten.  Tr. 765.  What matters is that, like the January 2019 treating notes made during Plaintiff's annual physical, these also do not reflect any complaints about the hands, ambulation or pervasive joint pain.  By contrast, at the appointment for the purpose of providing Plaintiff with an opinion to support her disability application, Nurse Welch made opposite findings.  Compare Tr. 538-41, with Tr. 760-64.  Other treating sources making analogous findings are consistent with Nurse Welch's January/May 2019 treating notes but clash with her July 2019 opinions and with the June 18, 2019, note that is the basis for the opinions.

Also inconsistent with Nurse Welch's July 2019 opinions are Plaintiff's statements regarding her activities.  These reflect that she was living independently, was able to drive short distances, exercised regularly in the gym, prepared simple meals, went to church regularly, occasionally sewed clothing, did laundry, cleaned her home, and took at least two trips (to Virginia and to Georgia).  Tr. 43-46, 199, 217-19, 538, 612-14, 723.  The most extreme findings in the Welch opinions – that Plaintiff could not use her hands at all for any purpose and was seriously impaired in her ability to walk – not only clash with these activities, but also seem to be supported only by Plaintiff's subjective statements to Nurse Welch at the appointment for the purpose of getting the disability opinion.  As Nurse Welch recorded:

> Pt . . . presents for functional evaluation relative to a disability claim.  She describes impairment in fine motor control of her hands and impairment of sensory function in her feet interfering with proprioception and ambulation.

Tr. 760 (emphasis added).  Nurse Welch's July 2019 opinion about the total inability to use either of her hands is also inconsistent with Plaintiff's testimony at the ALJ hearing when she explained that hand tingling and numbness disturb her during the night, but on wakeup she runs her hands under hot water, as well as that she had never obtained treatment for her hands.  Tr. 47 ("I just – just tried to do things at home, myself").

In short, the ALJ's determination that the Welch opinions are not persuasive because they are inconsistent with the balance of the record and are not adequately supported by clinical observations and techniques is untainted by legal error and is well supported by the evidence of record.  Further, in light of this legally and factually appropriate finding, the ALJ's determination of the persuasiveness of the prior administrative medical findings of the three state agency physician experts is also untainted by error and well supported.  That is, the reality that they did not see the unpersuasive Welch opinions is not a reason to remand this case.

**B.      Claim of RFC Error in Omission of Findings**

Plaintiff argues that the ALJ's word choice in making her RFC finding – "medium work . . . except for up to frequent stooping . . ." – requires remand to determine if words were omitted. Tr. 22 (emphasis added); see also ECF 13-1 at 13-14.  She contends that this phraseology indicates on its face that the RFC is incomplete.

The Court finds that the ALJ's meaning is readily comprehensible, indeed crystal clear, and that there is no suggestion of missing words.  While the ALJ's words may not be the "acme of prose styling," as the Commissioner concedes, ECF No. 16-1 at 17, they are firmly grounded in the jargon of Social Security, in that "except for up to frequent stooping . . . " is a clear and unambiguous way to add the listed postural limits to the exertional ability to work at the medium level.  If there were any doubt (and the Court finds there is not), it is dispelled by the transcript of

14

the hearing, which sets out the hypothetical on which the RFC finding is based; the ALJ's

question lists the same set of limitations.  Tr. 54.  There is nothing to permit the conclusion that

there has been any omission.  Plaintiff's objection to the ALJ's decision on this ground is

rejected.

        **C.**        **Claim of Step Four Error – Reliance on VE's Testimony in Classifying PRW**

        Step Four of the "sequential analysis requires a particularized inquiry into the physical

and cognitive demands of [the claimant's] past employment."  Rams v. Chater, 989 F. Supp. 309,

318 (D. Mass. 1997).  The regulations require that the decisionmaker determine the claimant's

RFC and the physical and mental demands of the work that the claimant has done in the past.  Id.

(citing 20 C.F.R. § 404.1520(e)).  The ALJ must make findings concerning the specific

functional requirements for the prior job as actually performed or as generally performed in the

economy.  Stephens v. Barnhart, 50 F. App'x 7, 9 (1st Cir. 2002) (per curiam).  If substantial

evidence supports an ALJ's conclusion that a claimant's prior position is best classified by a

specified DOT category subject to specific functional requirements, the finding should be

affirmed.  See Cameron v. Berryhill, 356 F. Supp. 3d 186, 195 (D. Mass. 2019); Crooks v.

Comm'r Social Security, No. 5:12-CV-2876, 2013 WL 3057105, at *6 (N.D. Ohio June 17,

2013).

        Plaintiff's two-pronged argument that the ALJ stumbled at Step Four is not availing.

        First, Plaintiff focused on a scrivener's error in a footnote in the ALJ's decision.  In

overruling Plaintiff's post-hearing objection to the VE's testimony about her PRW, the ALJ

wrote: "the vocational expert specifically questioned the claimant as to her job duties."  Tr. 25

n.6.  This statement is simply wrong.  It was not the VE who questioned Plaintiff about her job

duties; rather, it was the ALJ herself who "specifically questioned" Plaintiff about her prior job

duties.  Tr. 37-38.  This examination by the ALJ began with a broad question that called for

Plaintiff to provide an all-inclusive description of her PRW – "And it's my understanding your –

your work was some kind of credit associate . . . .  Can you explain to me what you did?"  Tr. 37.

The ALJ followed the resulting answer by pressing for more details, including referencing the

work history report Plaintiff had prepared, while Plaintiff's counsel also inquired about her prior

work.  Tr. 37-38, 48-49.  The transcript further reflects that the VE was present during all of this

testimony and subsequently testified that he had enough information to classify the PRW.  Tr.

53-54.  Therefore, the inaccurate statement that the VE asked these questions is an obvious

mistake in drafting the decision and is not a reason for remand.  James S. v. Saul, C.A. No. 18-

453WES, 2019 WL 4862248, at *7 (D.R.I. Oct. 2, 2019) ("it is plain to the Court that the ALJ's

mistake is not a substantive error that taints the entire decision.  Rather, it is a scrivener's error

that does not require reversal because it is apparent that [the] ALJ clearly understood" the

substantive matter in issue).

    Plaintiff's second argument is that the ALJ's Step Four analysis is not based on

substantial evidence because the ALJ ignored Plaintiff's testimony that her job title was "Senior

Credit Associate," Tr. 194, and that she "worked with the sales representative and . . . with . . .

customer service dealing with the customers," Tr. 37, and failed to make appropriate functional

findings about the PRW.  The argument founders in the face of the substantial evidence on which

the ALJ's PRW findings rests.

    The prehearing record includes Plaintiff's description of her PRW in her work history

report and the job history portion of the disability report.  Tr. 194-96, 185-86.  It also features

Plaintiff's prehearing written argument that her PRW is a composite job,[10] which must be

---

[10] This argument asked the ALJ to find the PRW to be a composite of two DOT jobs – credit card clerk and
customer service clerk; Plaintiff has abandoned this argument.  See n.6 supra.

16

analyzed as actually performed, not as generally performed.  Tr. 144.  With this backdrop, the

ALJ developed the record during the hearing by questioning Plaintiff generally and with specific

follow-up questions regarding what she actually did in performing her prior work.  Tr. 37-38.

During this sequence of questions, the ALJ specially referenced Plaintiff's "work history report

that you filled out."  Tr. 37.  Plaintiff's attorney also examined his client, who testified that she

found her PRW difficult because of stress and diabetes, not due to exertional or other physical

barriers.  Tr. 48-49 (working had become stressful because it was very difficult because "I had

been taken out by ambulance because of the anxiety and stress, and with my diabetes, it was

going high").  The VE listened to Plaintiff's description of her past work and had access to the

information she provided in the work history and disability reports.  See SSR 82-62, Titles II and

XVI: A Disability Claimants Capacity To Do Past Relevant Work, In General, 1982 WL 31386,

at *3 (Jan. 1, 1982) ("statements by the claimant regarding past work are generally sufficient for

determining the skill level, exertional demands and nonexertional demands of such work").

      The ALJ's second and third questions to the VE deal a fatal blow to Plaintiff's Step Four

argument.  First, she asked, "Do you have sufficient information to classify the past-relevant

work?"  Tr. 53.  After the VE confirmed that he did, the ALJ asked him to state his opinion.  The

VE responded with his professional opinion that Plaintiff's PRW aligned to a single DOT

classification, he identified the DOT number for that job (205.367-022, "credit clerk") and he

testified that the work as described by Plaintiff and as limned by the DOT is "sedentary and

semiskilled."  Tr. 54.  Plaintiff's examination of the VE regarding the PRW was to ask the VE to

reaffirm the DOT job number.  Tr. 57.  She asked no questions about a composite job; she did

not attempt to challenge any aspect of the VE's opinion that her PRW was sedentary and semi-

skilled or that it aligned with the DOT job classified as "credit clerk."  Rather, she waited until

17

after the hearing to reinvigorate her composite job argument, this time highlighting the "credit clerk" job identified by the VE, in combination with DOT's "customer service clerk"; as support she pointed to the work history report that the ALJ specifically mentioned during the hearing. Before this Court, she has conceded that the "customer service clerk" job is not appropriate but nevertheless asks the Court to remand for further exploration on this issue.

The ALJ relied on the VE's unrebutted expert testimony to find that Plaintiff's PRW is "exertionally sedentary, semiskilled (SVP 4)." Tr. 25. She specifically found that Plaintiff could perform her PRW "<u>as actually</u> and generally performed." Tr. 25 (emphasis added). The Court concludes that this PRW finding is well supported by the VE's opinion testimony, which in turn was based on what Plaintiff herself said in describing her past work. Further, Plaintiff points to no meaningful disconnect between her statements and the DOT's "credit clerk" description; to the contrary, most of her responsibilities as she described them are consistent with the DOT description. <u>See</u> <u>Crooks</u>, 2013 WL 3057105, at *6. Further, to prevail on her argument that she really performed a composite job, Plaintiff had to demonstrate that the functional demands of her PRW as performed exceeded how the DOT version of the job relied on by the ALJ is generally performed. <u>See</u> <u>Tucker v. Berryhill</u>, No. 2:16-cv-00301-JHR, 2017 WL 2539750, at *2 (D. Me. June 11, 2017) (for claimant whose past relevant work is composite, functional requirements of both jobs must be considered). She has not come close to hitting this mark.

At bottom, the Court finds that Plaintiff's PRW argument – that remand is required, despite the ALJ's solid reliance on substantial evidence, because her past PRW, as performed, had some unspecified functional requirement that the VE (and therefore the ALJ) overlooked – "amounts to little more than a Rumpelstiltskin-like endeavor to turn straw into gold." <u>RTR</u>

Techs., Inc. v. Helming, 707 F.3d 84, 91 (1st Cir. 2013).  The ALJ's Step Four determination is affirmed.[11]

## V.      **CONCLUSION**

Based on the foregoing, Plaintiff's Motion to Reverse the Decision of the Commissioner (ECF No. 13) is DENIED and Defendant's Motion to Affirm the Commissioner's Decision (ECF No. 16) is GRANTED.

/s/ Patricia A. Sullivan
PATRICIA A. SULLIVAN
United States Magistrate Judge
December 14, 2021

---

[11] The Court also finds no error in the ALJ's well-supported alternative determination (Tr. 25 n.6) that Plaintiff's RFC permits her to perform the composite job as described in her attorney's post-hearing objection.  Tr. 257-58.